## The Newburyport Turnpike Corporation *versus* The Eastern Rail Road Company.

Under Revised Stat. *c.* 39, § 67, providing that every rail road corporation " may raise or lower any turnpike or way for the purpose of having their rail road *pass over* or *under* the same," a rail road corporation may raise a turnpike road for the purpose of constructing the rail road across it *upon the same level.*

This was a bill in equity praying for an injunction against the respondents.

By the bill and answer, it appeared, that on the 8th of February, 1839, the complainants received notice from the respondents, that they proposed to construct their rail road over the turnpike road of the complainants upon a level therewith, and, for this purpose, to raise the turnpike road to the height of three feet and a half above its existing level at the point of intersection ; that upon the complainants objecting thereto, the respondents applied to the county commissioners, to determine in what manner the rail road should cross the turnpike road ; that the county commissioners, after hearing the parties, reported, that the respondents should be permitted to raise the turnpike road to the height of three feet and a half above its existing level, for the purpose proposed, and in a mode specified by the commissioners ; which report was accepted ; and that the respondents had commenced operations on the turnpike road.

The respondents, in their answer, averred that it was their intention to complete the crossing in conformity with the directions contained in the report of the county commissioners.

*Jan. 16th, 1840, at Boston.* *Lunt,* for the complainants, cited Revised Stat. *c.* 39, § 66, 67, 69, 72, 79 ; *St.* 1836, *c.* 232, § 1 ; *St.* 1837, *c.* 226, § 1.

*Saltonstall* and *Lord,* for the respondents, cited Revised Stat. *c.* 39, § 66 *et seq.* ; *Rowe* v. *Granite Bridge Corporation,* 21 Pick. 344.

Shaw C. J. afterward drew up the opinion of the Court. This case presents a question of considerable interest, in regard to the powers of rail road companies, in cases where they necessarily intersect other ways, including turnpike roads, high-

ways, town ways, and private ways. Turnpike roads, highways, and town ways, are all public, and designed, as well as rail roads, to promote public accommodation. For, although turnpike roads are originally constructed, and subsequently maintained, by a company of stockholders, who advance their own capital for the purpose, and are reimbursed by a toll, still, when constructed, they are public works, the right to use them is secured to the public, an injury to them is a public injury, ( *Commonwealth* v. *Wilkinson*, 16 Pick. 175,) and the public benefit is the ultimate end and purpose of all the powers and privileges conferred upon them. This alone justifies and warrants the authority conferred on them to take private property when necessary for the construction of such turnpike road. These, therefore, as well as highways, town ways, and rail roads, are to be regarded as public works, intended in their various modes to promote public accommodation, and all alike entitled to consideration and respect, in all legislative regulations ; and we are to presume, that in granting, limiting, and modifying the powers and rights of each, the legislature had in view that common public good, which is the object of them all. In cases, therefore, where some interference is unavoidable, and where legislative provisions have been made with reference to such interference, such construction ought to be put upon them if possible, as that the powers and privileges of each shall be no further limited or restrained, than may be reasonably necessary to enable the other to accomplish the public purpose, for which it was established. Such must be presumed to have been the intention of the legislature ; and such intention may be often usefully referred to, in expounding provisions which are general and comprehensive in their nature, or doubtful in their terms.

The complainants insist, that the defendants had no authority by law to alter the level of the turnpike road, so that the rail road might cross it at the same level, without the consent of the turnpike corporation, and that the county commissioners had no authority to adjudicate or act in the premises. This depends upon the construction of the Revised Statutes. Revised Stat. *c.* 39, § 66, provides, that if any rail road shall be so laid out as to cross any turnpike road, or other way, it shall be so made as not to obstruct such turnpike road or way

The word "obstruct," in its ordinary sense, means to stop up, and wholly prevent travel, upon a road, or render it unfit for travel. In this section, it cannot be so construed, as to say, that the travel on such turnpike road or highway, shall not be rendered in any degree more inconvenient, because it is clearly implied, in a subsequent section, § 72, that the rail road corporation may erect a bridge over the rail road, or a tunnel under it, for the travel on the turnpike road, and such elevation or depression of the road must, to some extent, impede the travel upon it, and render it less convenient. We think, therefore, that this section intended to provide, that the travel upon a turnpike road or public or private way, already established, should not be stopped by a rail road, but that its continuance should be provided for, by alterations in the road itself, which should increase the impediment and inconvenience of travel upon it as little as possible, and the subsequent provisions were made with a view to such alterations. It is obvious, that, in many cases, it would be necessary to effect this object, by alterations in the turnpike road or highway itself, because, from the nature of the work, it is important, and often necessary, that the rail road should be kept on a given level and not be varied so as to adapt it to the existing levels of other roads.

But the question mainly turns on the construction of the 67th section, which provides, that every rail road corporation may raise or lower any turnpike or way, for the purpose of having their rail road pass over or under the same ; it then goes on to provide that before proceeding to make any alteration in such way, they shall give notice to the turnpike proprietors or selectmen, that the latter may then give notice what alterations they require, or, if the parties do not agree, they may apply to the county commissioners, to determine whether any and what alterations shall be made, and their decision shall be final.

The complainants contend, that it was not the intention of the legislature, to authorize the rail road corporation to raise the turnpike road a few feet to bring it up to the level of the rail road, and thus let it pass over the rail road on the same level, but so to raise it, as to pass above the rail road, by means of a separate and independent bridge. The argument

is this, that the words " raise " and " lower," as applied to the turnpike road, are relative and opposite ; so, the corresponding words " under " and " over " are to be construed as applying to the rail road ; and as they can only lower the turnpike road to pass under the rail road, by an independent passage, so it was only intended that they should raise the turnpike road to pass over the rail road at a higher grade and by an independent bridge.    But it seems to us, that this reasoning is far from being conclusive.    The words " over " and " under," as applied to the surface, are not precisely opposites.    One passes over a road, if he crosses it on the surface, as well as when he crosses above it, on a bridge ; but he cannot be said to pass under it, unless on another surface at a lower level.    We think the words are to be applied, according to the subject matter.    It may be necessary to lower or to raise the turnpike road, to let the rail road pass over ; in the former case, where the surface of the turnpike is higher than the grade of the rail road at the place of intersection, in the latter, where it is lower.    And if so, why should it not have been contemplated by the legislature ?    The words are sufficient to warrant this construction, and the power is as useful and necessary in the one case as in the other.    To raise the turnpike road to permit the rail road to pass over it at the same level, is then as much within the words and intent of the statute, as the power of raising it much higher to carry the travel above the rail road by an independent bridge.    This latter power is undoubtedly granted, but does not, in terms or by implication, exclude the other.    And it may be remarked as tending to strengthen this conclusion, that raising the turnpike road three feet, to pass on the level of the rail road, is a much less impediment to travelling on the turnpike road than to raise it eighteen or twenty feet, to pass above it by a bridge.    The former would create a slight rise in the road, easily relieved ; the other would require the ascent and descent of a considerable elevation.    The construction which is thus put on the statute, is calculated to promote the execution of one of these public works, that is, the rail road, with the smallest amount of inconvenience to the travel on the other, the turnpike road.    The Court are therefore of opinion, that the rail road company were authorized, without

Newbury-
port Turnp.
Corp.
*v.*
Eastern Rail
Road Co.

Newbury-
port Turnp.
Corp.
*v.*
Eastern Rail
Road Co.

the consent of the proprietors of the turnpike road, to pass the turnpike road and to raise the turnpike road sufficiently at the place of intersection, to pass on the same level with the rail road, having the sanction and approbation of the county commissioners therefor, and making the alterations in the manner directed and required by those commissioners ; which was done in the present case.

*Decree for the respondents accordingly, with costs.*